## Wilson King v. The State.

1. PRACTICE IN THIS COURT. — Though well settled that an appellate court will not disturb a verdict of conviction on account of the evidence, when there is evidence to support it, the converse rule is equally well settled — that it is not only the province, but the duty, of the court to set aside such a verdict when it is against the evidence, or when there is no evidence to support it.

2. MURDER IN THE SECOND DEGREE. — Note evidence in this case on which a conviction was had in the court below for murder in the second degree, but which this court holds insufficient to support the conviction, because it discloses none of the *indicia* of malice.

APPEAL from the District Court of Harrison. Tried below before the Hon. A. J. BOOTY.

The material evidence is detailed in the opinion of this court. The appellant and the deceased were negro striplings.

*W. T. S. Keller* and *W. C. Lane*, for the appellant.

*W. B. Dunham*, for the State.

WHITE, J. The appellant in this case was tried for the murder of one Charley Clemmons, was found guilty of murder in the second degree, and his punishment was assessed at confinement in the penitentiary for forty years.

Objection has been made to a portion of the charge of the court, as given to the jury, with regard to negligent homicide; which objection, in our opinion, is not well taken.

The words "apparent intention to kill," which are the special grounds of objection, are the words used in the statute (Pasc. Dig., art. 2241), and are made applicable by the statute to both degrees of negligent homicide. As a whole, we think the charge, so far as given, was an admirable exposition of the law of the case. But under the peculiar circumstances of this case, we are of opinion that the special instruction asked by defendant's counsel should also have been given.

To our minds, the main question to be determined here is the sufficiency of the evidence to support the verdict and judgment. We are cognizant of the fact that, in passing upon the sufficiency of the evidence, an appellate tribunal will not interfere with the verdict of a jury so long as there is evidence to support it; but the rule is equally as well settled that where there is no evidence to sustain the verdict, or where the verdict rendered is against the evidence, it is not only its province, but its duty, to do so.

One of the grounds for a new trial prescribed by the Code is that the verdict is contrary to the law and the evidence (Pasc. Dig., art. 3137), and it is further provided that "the Supreme Court may revise the judgment as well upon the law as upon the facts; but when a cause is reversed for the reason that the verdict is contrary to the weight of the evidence, the same shall, in all cases, be remanded for a new trial." Pasc. Dig., art. 3210.

"These provisions," as was said by our Supreme Court in *Tollett* v. *The State*, 44 Texas, 95, "impose upon the District Court in the first instance, and afterwards on this court, the responsibility of determining whether or not there has been adduced before the jury a sufficient amount of legal and competent evidence as would render it safe to allow the verdict to stand, and become a precedent in the adjudication of offenses under the law. The performance of this duty on the part of the court is an exercise of legal discretion and judgment as to what facts should be sufficient to rebut the legal presumption of innocence to which every one is entitled who is put upon trial for an offense."

The facts of the case under consideration are, in substance, as follows: The defendant and the deceased were two boys who seem to have been raised together, in the same neighborhood, and were intimate friends. In her testimony, the mother of the deceased says: "The boys — Wilson and Charley — were good friends; they were very frequently together. Charley was frequently off with Wilson. They hunted together, and frequently slept together. There was no ill-feeling between them, so far as I know. Deceased had a gun at home; he and defendant frequently hunted together."

The only witness to the shooting was the principal State's witness, Salina Clemmons, and we give her testimony *in extenso*, as developing the facts as they occurred.

She says: "I know the defendant, Wilson King; there he is, in court. I knew Charley Clemmons; he is dead.

Wilson King shot him. He was my brother. The killing was on Mr. Harry Bell's place, in Harrison County, Texas, four weeks ago last Friday. My mother, my sister, and deceased were going along the road leading through to Mr. Harry Bell's place from Scottsville. My mother and sister went on ahead, and left deceased and me at a haw tree. My mother and my sister had gone on up the road some distance, and a bend in the road prevented her from seeing us. She was out of sight. Brother Charley was up in a haw tree, getting some black haws. Defendant came along with a gun, blowing a horn. Deceased called to defendant to ' come by and give him some powder and shot.' Defendant came up and said he had none. Deceased said, ' Yes you have, Wilson; give me some.' Directly afterwards defendant pointed his gun at brother Charley, up in the tree. I said, ' You Wilson! quit pointing that gun at Charley; you might shoot him.' Defendant said, ' No, I am not going to shoot him.' Defendant took the gun down, and deceased came down out of the tree and started off towards our home, having picked up a bundle he had and placed it on his head, holding it with his left hand. I then started up the road home, and was about forty feet from the deceased when I heard defendant say, ' Look a here, Charley! look here!' I immediately turned and saw defendant pointing a gun at deceased. Deceased turned his left side to defendant, and I was looking at him; and then the gun fired, and Charley hallooed and fell down on the ground. Defendant threw the gun down, and ran up to deceased and tried to lift him up. Deceased was doubled up in a knot. I laid the baby down and ran back to my brother Charley, and said to defendant, as he tried to lift deceased up, ' There, now, Wilson, you have shot Charley, didn't you?' Defendant said, ' I did not do it.' I said, ' Hush, Wilson! you did; you know you did. What did you do it for?' Defendant said, ' I did not go to do it.' I ran on towards where my mother and sister were. I met my mother and

sister up the road, coming back to deceased, and told my mother defendant had shot deceased, and she told me to run home for my father. Before I left, defendant took up his gun and started off across the woods in a half-run and half-walk. Deceased was shot in the left side, under the arm."

It is unnecessary to give the remaining portion of the testimony of this witness, as elicited upon the cross-examination, since it developed no new facts worthy of mention.

In behalf of the defendant, it was shown that about an hour after the shooting he appeared at the field of one Jo Heines, and asked him to go with him to the city of Marshall, ten miles distant, to report himself to a justice of the peace; that they went, and were there advised to go back and report to a justice of the peace in the precinct where the killing had taken place. Early the next morning he appeared at the place where the justice of the peace was at the time, and gave himself up. He had not been arrested; no officer came with him; no complaint had been filed against him. The justice turned him over to his constable, who asked a gentleman who was going into Marshall to take the defendant along and turn him over to the sheriff.

This witness says: "I started defendant on ahead, and caught up with him about eight miles from Marshall. I requested Mr. Hal Long to let defendant ride on his wagon to town, which he did. I then rode on ahead, and saw the defendant no more until he came to me in town, and we went to Sheriff Singleton, and he took charge of defendant."

These are all the important facts testified to on the trial, as shown by the statement sent up in the transcript. In our opinion, they are not sufficient to establish a case of implied malice, necessary to support a conviction for murder in the second degree; and so believing, and further, that the court erred in refusing a new trial, the judgment is reversed and the cause remanded.

*Reversed and remanded.*